UNITED STATES DISTRICT COURT                        <u>For Online Publication Only</u>
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DIDIER CASSAGNOL,

                                    Plaintiff,

                                                                    <u>**MEMORANDUM &**</u>
                                                                    <u>**ORDER**</u>
            -against-                                               20-CV-606 (JMA) (AKT)

VILLAGE OF HEMPSTEAD, DON RYAN, IN
HIS OFFICIAL CAPACITY AS MAYOR,
CHERICE P. VANDERHALL, IN HER OFFICIAL
CAPACITY AS VILLAGE ATTORNEY, AND
LISA BARRINGTON, IN HER OFFICIAL
CAPACITY AS DIRECTOR OF HUMAN
RESOURCES,

                                    Defendants.
------------------------------------------------------------------X
**APPEARANCES:**

Kristina S. Heuser
P.O. Box 672
Locust, NY 11560
    *Attorney for Plaintiff*

Richard S. Finkel
1399 Franklin Avenue, Suite 200
Garden City, NY 11530
    *Attorney for Defendants*

**AZRACK, United States District Judge:**

        Plaintiff Didier Cassagnol ("Plaintiff") is a former police officer for the Village of

Hempstead who remains employed by the Village in a civilian role.  He brings various claims

following his purported demotion to "Neighborhood Aide" in July 2019.  (ECF No. 1.)

        Defendants Village of Hempstead, Don Ryan (sued in his official capacity as Mayor),

Cherice P. Vanderhall (sued in her official capacity as Village Attorney), and Lisa Barrington (sued

in her official capacity as Director of Human Resources) (collectively, "Defendants") now move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 15.)  In addition, they seek sanctions pursuant to Federal Rule of Civil Procedure 11.  (ECF No. 18.)  For the reasons that follow, the Court **GRANTS** Defendants' motion to dismiss in its entirety and dismisses this case.  However, the Court **DENIES** Defendants' motion for sanctions, as set forth in more detail below.

## I.  BACKGROUND

The Court takes the factual allegations in the complaint as true and draws all reasonable inferences in favor of Plaintiff.  See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

According to the complaint, Plaintiff began working as a police officer for the defendant Village of Hempstead in 2005.  (ECF No. 1 at 3.)  On August 31, 2011, Plaintiff was injured in an off-duty motorcycle accident in which he lost the use of his lower extremities and was paralyzed from his T1-T2 vertebrae down.  (Id.)  Plaintiff claims that he requested to return to work in February 2012, but his chiefs asked him to wait to return so they could assess accessibility issues with police headquarters.  (Id. at 4.)  For nearly a year, Plaintiff contacted his chiefs requesting to return to work, but they rebuffed him, citing accessibility issues they still needed to resolve.  (Id.)  Plaintiff claims that he used his vacation and sick days during this time.  (Id.)  Eventually Plaintiff reached an agreement with the Village on December 4, 2013.  (Id.)  Though he was represented by counsel, Plaintiff alleges that he executed the Stipulation of Settlement, ("the Settlement"), "[u]nder extreme duress."  (Id.)

Following the Settlement, Plaintiff returned to work.  He was reassigned from his prior role in Police Headquarters to the Domestic Violence Bureau, which is located in a separate building, the Armory.  (Id. at 4-5.)  According to the complaint, he believes that he was reassigned to the

Armory because that building has a ramp, unlike Police Headquarters.  (Id. at 5.)  However, the complaint raises several accessibility issues with the Armory.  In particular, Plaintiff contends that the ramp into the building is inadequate and explains how he uses a women's restroom because no men's restroom has sufficiently wide stalls to fit his wheelchair.  (Id.)

Plaintiff claims that though the Settlement required that he resign in September 2016, he nevertheless continued to work in the Domestic Violence Bureau until July 2019.  At this time, a new Village Attorney took office and insisted that the Settlement be enforced.  (Id.)  In the months that followed, the Director of Human Resources "deemed plaintiff to have retired as a police officer in spite of him not putting in a resignation letter nor any retirement paperwork."  (Id. at 6.)  According to Plaintiff, Defendants gave him the civilian title of "Neighborhood Aide," "reduced his salary by two-thirds," and stripped him of certain benefits, including paid leave time and tier status in the pension program.  (Id.)  However, Plaintiff claims that he was still required to perform "exactly the same duties as he was when he was a police officer."  (Id.)  Plaintiff also alleges that his partner in the Domestic Violence Bureau was a detective and that they both performed the same duties.  (Id. at 5-6.)

As explained below, in June 2019, Plaintiff sued Defendants in state court, challenging the enforceability of the Settlement.  On November 18, 2019, the state court granted Defendants' motion to dismiss that action.

Plaintiff also filed a Charge of Discrimination in 2019 and received a Right-to-Sue Letter from the Equal Employment Opportunity Commission on November 5, 2019.  (Id.)

On February 4, 2020, Plaintiff initiated the instant litigation, in which he brings claims for violations of: (1) Title I of the Americans with Disabilities Act ("ADA"); (2) Title III of the ADA; (3) Section 504 of the Rehabilitation Act; (4) 42 U.S.C. § 1983 Due Process; (5) 42 U.S.C. § 1983

Equal Protection; (6) 42 U.S.C. §§ 1985, 1986 Conspiracy to Violate Civil Rights; (7) New York State Human Rights Law ("NYSHRL"); and (8) Intentional Infliction of Emotional Distress. For relief, Plaintiff seeks an order that directs the Village to bring its facilities into compliance with the ADA; reinstates him as a police officer or detective; and pays damages consisting of a retroactive award of all salary, benefits, and compensation for his new title as well as $8 million in compensatory damages and attorney's fees. (Id. at 14-15.)

Following a pre-motion conference before the undersigned on March 11, 2020, Defendants moved to dismiss Plaintiff's complaint. (ECF No. 15.) Their motion contains several key facts that supplement the complaint and are critical to the Court's analysis.

In particular, Defendants attach a copy of the December 4, 2013 Settlement to their motion.[1] The Settlement contains certain provisions that are critical to the Court's resolution of the instant motion. It provided:

> For the purpose of resolving the Notice of Claim and while still asserting that [Plaintiff] is unable to perform the essential functions of a Police Officer in the Department with or without a reasonable accommodation, the Village shall continue to employ [Plaintiff] as a Police Officer until in or about September 2016 when he is scheduled to accrue ten (10) years of service credit with the New York State Police and Fire Retirement System ("PFRS"). The Village's obligation to employ [Plaintiff] as a Police Officer shall cease in or about September 2016 on the date he is scheduled to accrue ten (10) years of service credit with PFRS.

---

[1]   The Court can consider "documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about . . . and relied upon, in bringing the suit." Tortomas v. Pall Corp., No. 18-CV-5098, 2020 WL 2933669, at *2 (E.D.N.Y. May 31, 2020). Here, the Settlement is explicitly described in the complaint and incorporated by reference. Plaintiff knew about it and relied on its terms in bringing suit. Plaintiff does not contest the document's authenticity or the Court's ability to consider and interpret the Settlement at the motion to dismiss stage. Indeed, as explained infra, the relief he seeks requires the Court to find that the Settlement is unenforceable. See also ECF No. 1 at 11 ("[T]he agreement was unconscionable, violative of public policy, procured by fraud and duress, and not supported by consideration and is, for one or all of these reasons, unenforceable."); ECF No. 22 at 5 ("Plaintiff will explain to a jury at the appropriate time that he did not read or understand this language and signed the agreement under duress."). Accordingly, the Court will consider the terms of the Settlement in its analysis.

(ECF No. 17-3 at 2.)  As part of the Settlement, the Village agreed to assign Plaintiff to a "transitional 'light duty' position" from December 9, 2013 "until in or about September 2016 when [Plaintiff] is scheduled to accrue ten (10) years of service credit with PFRS."  (Id.)  Upon accrual of the ten years of service credit, the Village was to hire Plaintiff as a "Neighborhood Aide" or a "Police Communications Operator, (i.e., Police Dispatcher)," both of which were to be "at the 'bottom step' starting salary set forth in the applicable collective bargaining agreement."  (Id.)  His hiring was also conditional on taking and scoring a certain score on a Civil Service examination. (Id.)  Plaintiff was also permitted to take a qualifying exam for an off-duty weapon.  (Id.)

As part of the Settlement, Plaintiff agreed that "as a result of the injury he suffered on or about August 31, 2011, he is unable to perform the essential functions of a Police Officer, or any of the superior ranks, in the Department, with or without a reasonable accommodation."  (Id. at 4.) The Settlement also explained that "the Village is providing him with an accommodation and benefits in excess of and beyond any accommodation required by the federal Americans with Disabilities Act or the New York State Human Rights Law."  (Id.)  Further, the Settlement provided that Plaintiff "hereby irrevocably resigns as a Police Officer effective in or about September 2016 on the date when he is scheduled to accrue ten (10) years of service credit with PFRS" and commits to "timely file a letter of resignation to that effect with the Village in accordance with applicable law."  (Id.)  He also agreed not to "apply for promotion to any rank above Police Officer in the Department" and "waive[d] any and all rights he has, or may believe he has, to apply for, be considered for, or be appointed, now or in the future, to any of the superior ranks of the Department."  (Id.)  The Settlement detailed the precise parameters of Plaintiff's "transitional light duty assignment" and noted that there "are no permanent 'light duty' positions in the Department." (Id.)

Plaintiff also agreed to refrain from seeking "future employment with the Village as a

Police Officer." (Id. at 6.)  Further, he waived:

> his right to bring or pursue any lawsuit, grievance, charge, arbitration or
> administrative proceeding, upon any claim [he] may have or may have had against
> the Village regarding any matter arising on or before the date of [his] execution of
> this Agreement, whether or not such claims have been asserted in the Notice of
> Claim or elsewhere, and whether or not such claims are known at the time of the
> execution of this Agreement. [Plaintiff] hereby irrevocably and unconditionally
> releases and forever discharges the Village of and from any action, charge, causes
> of action, suit, obligation, promise, stipulation, damage, debt, complaint, liability,
> claim, grievance, arbitration, cost, loss, right, expense and/or any controversy in
> law or equity of any nature whatsoever asserted or unasserted, known or unknown,
> suspected or unsuspected, which [he] ever had, now has or hereinafter may have
> against the Village regarding any matter arising on or before the date of [his]
> execution of this Agreement.  Said waiver shall include, but shall not be limited to,
> any and all claims, grievances, demands for arbitration or causes of action, known
> or unknown, arising out of, or in any way connected with or relating to:
>
>> [His] employment with the Village; and/or
>>
>> [T]he Village's return of [Plaintiff] to work following the August 31, 2011
>> injury suffered by [him]; and/or
>>
>> [A]ny alleged acts of interference with any of [Plaintiff's] rights; and/or
>>
>> [A]ny alleged acts of discrimination against [Plaintiff]; and/or
>>
>> [A]ny alleged acts of retaliation against [Plaintiff]; and/or
>>
>> [A]ny other act or omission of the Village; and/or
>>
>> [A]ny other interaction with and/or between [Plaintiff] and the Village,
>> including but not limited to any and all common law claims, claims for
>> wages, bonuses, vacation, attorneys' fees, breach of implied or express
>> contract, impairment of economic opportunity, intentional or negligent
>> infliction of emotional distress, prima facie tort, defamation, negligent
>> termination, malicious prosecution, wrongful discharge, retaliatory
>> discharge or layoff, discharge or any other action in violation of any
>> applicable whistleblower statute or claim of any other tort, whether
>> intentional or negligent; and/or
>>
>> [A]ny claim or cause of action known or unknown, including but not limited
>> to any and all claims under: the Americans with Disabilities Act; Title VII
>> of Civil Rights Act of 1964; the Civil Rights Acts of 1991; the Civil Rights

Act of 1866; 42 U.S.C. §§ 1981, 1983 and/or 1985; the New York State Human Rights Law (Executive Law § 296, et seq.); the Rehabilitation Act of 1973 (including Section 504 thereof); the Equal Pay Act; the Consolidated Omnibus Budget Reconciliation Act; the Family and Medical Leave Act; the Age Discrimination in Employment Act; the New York State Constitution; the United States Constitution; or any other federal, state, or local municipal statute, law, rule, or regulation of any kind.

(Id. at 6-7.)

In addition to providing the specific terms of the Settlement, Defendants' motion also attaches documents from Plaintiff's state court litigation.  On June 26, 2019, Plaintiff filed a verified complaint in Supreme Court, County of Nassau against Defendants.  (ECF No. 17-1; see Cassagnol v. Village of Hempstead, N.Y. Sup. Ct., Index. No. 608733/2019.)[2]  In this complaint, Plaintiff brought claims seeking to set aside the Settlement because, he argued, it was unconscionable, procured by fraud, executed under duress, and violated public policy.  The complaint:

request[ed] that the Stipulation of Settlement entered into by and between the plaintiff herein and the Village of Hempstead in December 2013 be deemed null and void in its entirety, such that plaintiff shall enjoy continued employment in his current capacity as a Police Officer subject to the rules, regulations, protections, and opportunities enjoyed by every other Police Officer employed by the Village of Hempstead, and such that there shall be no restriction upon him pursuing any remedy available to him at law to redress any discriminatory conduct to which plaintiff was and/or continues to be subjected to in the context of his employment, including but not limited to the failure of the Village to make their buildings complaint with the Americans with Disabilities Act and other applicable law and monetary damages sought by his Notice of Claim, together with an award of counsel fees and costs associated with this action and any such other and further relief as this Court may deem just and proper.

(Id. at 12.)  He also filed an "Order to Show Cause with Temporary Restraining Order" that sought to stay enforcement of the Settlement.  (ECF No. 17-4.)  Ultimately, the Supreme Court denied his

---

[2]  The Court takes judicial notice of the filings and orders in the state court litigation.  See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

application.  (ECF No. 17-5.)  Thereafter, Plaintiff modified his request for relief and sought reinstatement as a police officer.  (ECF No. 17-6.)

In a Decision and Order dated November 18, 2019, Judge Leonard D. Steinman granted Defendants' motion to dismiss, rejecting Plaintiff's arguments that the Settlement was unconscionable, that it violated public policy, that Plaintiff had been the victim of fraud, and that he was entitled to rescission as a matter of law.  (ECF No. 17-7 at 3.)  Ultimately, Judge Steinman held that Plaintiff "ratified the agreement by enjoying the significant benefits it afforded to him for 5 1/2 years, and did not bring this action until the Village indicated its intention to enforce the terms it bargained for."  (Id.)

## II.  DISCUSSION

Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF No. 15.)  The Court grants the motion for the reasons set forth below.

The Court notes that, in opposing Defendants' motion, Plaintiff submitted a short, 10-page opposition brief.  (ECF No. 23.)  Most of the arguments therein are set out in conclusory fashion with limited citations to authority.

## A.  **Standard of Review**

### 1.  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim when there is a "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1). "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action."  Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.À.R.L., 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting Makarova v. United

States, 201 F.3d 110, 113 (2d Cir. 2000)).  In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true.  Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).  In resolving a jurisdictional issue, the Court may consider other materials beyond the pleadings but may not rely on mere conclusions or hearsay statements contained therein.  J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).  The application of the Rooker-Feldman doctrine "goes to subject-matter jurisdiction."  Hoblock v. Albany Cty. Bd. Of Elections, 422 F.3d 77, 83 (2d Cir. 2005).

2.  Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  Mere labels and legal conclusions will not suffice.  Twombly, 550 U.S. at 556.  When reviewing a motion to dismiss, the Court accepts the factual allegations set forth in the complaint as true and draws all reasonable inferences in favor of the plaintiff.  See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).  Motions to dismiss invoking res judicata are properly brought under Rule 12(b)(6).  See Wiercinski v. Mangia 57, Inc., No. 09-CV-4413, 2010 WL 2681168, at *1 (E.D.N.Y. July 2, 2010).

B.  **Application**

1.  **Rooker-Feldman**

Defendants first argue that the Court lacks subject-matter jurisdiction because the Rooker-Feldman doctrine should bar Plaintiff's claims.  The Court disagrees.

The Rooker-Feldman doctrine is the "clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." Hoblock, 422 F.3d at 84; see also Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (holding that only the Supreme Court can entertain a direct appeal from a state court judgment); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983) (finding that federal courts do not have jurisdiction over claims which are "inextricably intertwined" with prior state court determinations). The doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

For the Rooker-Feldman doctrine to apply, the Second Circuit requires four elements to be met: (1) "the federal-court plaintiff must have lost in state court," (2) "the plaintiff must complain of injuries caused by a state-court judgment," (3) "the plaintiff must invite district court review and rejection of that judgment," and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock, 422 F.3d at 85 (internal quotation marks and citations omitted). The first and fourth requirements are procedural, while the second and third requirements are substantive. Id.

As the Second Circuit has explained, the second element, that a plaintiff must complain of an injury caused by a state judgment, "is the core requirement from which the others derive." Id. at 87. As the Circuit later clarified, the operative question in resolving this substantive requirement is: "are the injuries of which plaintiffs complain produced by the state-court judgments at question or merely ratified by such judgments?" Sung Cho v. City of New York, 910 F.3d 639, 646 (2d Cir.

2018) (emphasis in original).  Because the second element for application of Rooker-Feldman has not been met here, the Rooker-Feldman doctrine is not applicable.

In a single, conclusory sentence, Defendants argue that "[b]y seeking relief that the Settlement Agreement precludes and attempting to advance claims that the State Court held were validly waived and released, Plaintiff is complaining of injuries caused by that State Court judgment."  (ECF No. 16 at 21.)  In their reply brief, Defendants appear to focus only on three of the four Rooker-Feldman elements, ignoring the second element regarding injury by the state-court judgment—i.e., what the Second Circuit described as "the core requirement" of the Rooker-Feldman doctrine.  (ECF No. 24 at 6-8.)

Because Plaintiff complains of injuries merely ratified and not produced by the state-court judgment, the Court finds that the Rooker-Feldman doctrine does not apply here.  In assessing whether a state-court judgment is the source of a plaintiff's injury, the Second Circuit posed the following hypothetical scenario to show "how a suit asking a federal court to 'den[y]' a legal conclusion' reached by a state court could nonetheless be independent for Rooker-Feldman purposes."  Hoblock, 422 F.3d at 87 (quoting Exxon, 544 U.S. at 293).  The panel posited:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses.  If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment.  Instead, he will be alleging injury based on the employer's discrimination.  The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by Rooker–Feldman, of the state-court judgment.

Id. at 87-88.

This hypothetical scenario is instructive in guiding the Court's analysis as to the application of Rooker-Feldman to the instant situation.  Here, Plaintiff claims that Defendants denied him reasonable accommodation, discriminated against him on the basis of his disability, denied him

11

due process, violated his equal protection rights, conspired to violate his civil rights, and intentionally inflicted emotional distress.  (ECF No. 1.)  These harms do not flow from the state court's prior finding that the 2013 Settlement was enforceable.  In other words, the causes of Plaintiff's purported injuries were the actions and inactions of Defendants, not the state court.  See Marshall v. Grant, 521 F. Supp. 2d 240, 244-45 (E.D.N.Y. 2007) (denying application of Rooker Feldman because plaintiff claimed that "the cause of his injury was Defendants' actions—their alleged perjury, fraud and misrepresentations" and "Defendants' actions were not produced by the state court judgment.  Rather, they may be said to have been 'ratified, acquiesced in, or left unpunished by it.'").  Moreover, Defendants forced Plaintiff to resign and transfer pursuant to the Settlement before the state court issued any judgment, which further indicates that Rooker-Feldman is not applicable here.  Accordingly, the second element necessary for application of Rooker-Feldman has not been satisfied.  The Court need not analyze the remaining factors since all four must be met for the doctrine to apply.

### 2. Res Judicata

Defendants next argue that Plaintiff's claims are barred by the doctrine of res judicata.

### a. Standard for Res Judicata

Pursuant to the doctrine of res judicata—which is also known as claim preclusion—"'[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  St. Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir. 2000) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)); see also EDP Med. Computer Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007).

The doctrine of res judicata applies when three circumstances are met: (1) there was "a previous action that resulted in a final adjudication on the merits," (2) "the party against whom res

judicata is to be invoked was party to the previous action or in privity with a party to that action," and (3) "the claims involved in the current case were, or could have been, raised in the previous action." Talley v. LoanCare Servicing, Div. of FNF, No. 15-CV-5017, 2018 WL 4185705, at *6 (E.D.N.Y. Aug. 31, 2018).

With respect to state court judgments, a federal court applying the doctrine of res judicata "must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." Burka v. New York City Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994). A federal court considering the preclusive effect of a state court judgment must therefore look to the law of the state in which the judgment was rendered. See Ferris v. Cuevas, 118 F.3d 122, 125–26 (2d Cir. 1997). Since the judgment at issue here was rendered in New York, the Court must look to New York law. Courts applying New York law use a transactional approach to res judicata that bars "a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 265 (2d Cir. 1997) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). "Important factors to consider when applying this transactional approach to res judicata include whether the same evidence is needed to support both claims and whether the same facts are essential to both actions." Berrios v. State Univ. of New York at Stony Brook, 518 F. Supp. 2d 409, 416 (E.D.N.Y. 2007).

For the third element, courts assess whether a matter could have been raised in a prior action by considering if the later action involves the same "claim" or "nucleus of operative fact" as the first action. Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 90 (2d Cir. 1997). In determining whether two actions arise from "the same nucleus of operative facts," courts consider "whether the underlying facts are related in time, space, origin, or motivation, whether they form

a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." Waldman v. Vill. Of Kiryas Joel, 207 F.3d 105, 108 (2d Cir. 2000) (quotations and citations omitted).

**b. Analysis**

The first and second requirements for application of res judicata are clearly met here. First, the state court action resulted in a final adjudication on the merits when the state court dismissed Plaintiff's claims and found the Settlement enforceable. Plaintiff's pending appeal does not alter this analysis for purposes of invoking res judicata. See, e.g., Petrella v. Siegel, 843 F.2d 87, 90 (2d Cir. 1988) ("[T]he determination of the state supreme court that under New York law Petrella did not resign is entitled to res judicata effect, even though the city may be appealing that determination.") Second, both the state court action and the instant litigation involve both the same plaintiff and defendants. As to the third element, as the Court explains in detail below, all the claims involved in the current case "were, or could have been, raised" in the prior action. Allen v. McCurry, 449 U.S. 90, 94 (1980).

Defendants argue that "the claims that Plaintiff raises in this action regarding the enforceability of the Settlement Agreement were already raised, or could have been raised, in the State Court action." (ECF No. 16 at 23.) Defendants' reply brief also asserts that res judicata bars all of Plaintiff's claims and not just those regarding enforceability of the Settlement.

To the extent Plaintiff's current claims challenge the Settlement, his claims are barred by res judicata. Additionally, even if Plaintiff's claims are construed as not directly challenging the enforceability of the Settlement, all of his claims are still precluded by res judicata. Although Plaintiff did not raise his current statutory, constitutional, and common law claims in state court, it is clear that Plaintiff could have raised all of these claims in that litigation.

14

Plaintiff's verified state complaint brought four causes of action to set aside the Settlement: (i) unconscionability, (ii) procurement by fraud, (iii) duress, and (iv) violation of public policy. (ECF No. 17-1.)  Plaintiff's verified complaint sets out, in depth, the factual circumstances leading up to the execution of the Settlement as well as the events that post-date the Settlement, including Defendants' invocation of the Settlement in March 2019 to force his transfer and demotion.  Many of the factual allegations set out in Plaintiff's state court complaint mirror the factual allegations in his federal suit.

Additionally, in the state court action, Plaintiff sought, as relief, an order that the Settlement:

> be deemed null and void in its entirety, such that [P]laintiff shall enjoy continued employment subject to the rules, regulations, protections, and opportunities enjoyed by every other Police Officer employed by the Village of Hempstead, and such that there shall be no restriction upon him pursuing any remedy available to him at law to redress any discriminatory conduct to which plaintiff was and/or continues to be subjected to in the context of his employment, including but not limited to the failure of the Village to make their buildings compliant with the Americans with Disabilities Act and other applicable law and monetary damages sought by his Notice of Claim, together with an award of counsel fees and costs associated with this action and any other and further relief as this Court may deem just and proper.

(Id. at 12.)  Plaintiff's transfer to the Neighborhood Aide position was finalized while the state court litigation was ongoing.  Once the transfer was finalized, Plaintiff sought, during the state court suit, his reinstatement as a police officer by filing an Affirmation in Reply & In Further Support of the Order to Show Cause.  (See ECF No. 17-6.)

In the instant federal litigation, Plaintiff seeks relief that is functionally identical to the relief he previously sought in state court.  He asks that this Court:

> (i) Issue an Order directing the Village of Hempstead to bring all of its facilities into compliance with the Americans with Disabilities Act and applicable state and local law, beginning with those facilities utilized by plaintiff; and (ii) Reinstate plaintiff to his prior title as a Police Officer and/or the appropriate rank correlating to his present duties, to wit: Detective; and, (iii) Retroactively award plaintiff all

15

salary, other compensation, and benefits appurtenant to the title to which he is restored/elevated; and (iv) Award plaintiff monetary damages of One Million Dollars on each cause of action, for a total of Eight Million Dollars; and, (v) Award plaintiff counsel fees and costs associated with this action; and (vi) Such other and further relief as this Court may deem just and proper.

(ECF No. 1 at 14-15.)

A comparison of Plaintiff's state and federal complaints makes clear that they arise from "the same nucleus of operative facts." The claims in Plaintiff's federal complaint "arise from the same transaction or occurrence" as the state court litigation. L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 88 (2d Cir. 1999). In particular, the claims stem from the same employment dispute between Plaintiff and Defendants, including Defendants' purported failure to accommodate his disability. This employment dispute was the subject of the declaratory judgment action Plaintiff brought in state court and, thus, constitutes the same transaction or occurrence that is at issue here.

Plaintiff advances no new factual allegations in his federal complaint that developed after he filed his verified complaint in state court. Ordinarily, the "discovery of additional facts . . . does not block the application of res judicata," particularly when "[t]he facts themselves arose prior to the filing of the original complaint." L-Tec Elecs., 198 F.3d at 88. The federal complaint provides some additional detail regarding Defendants' purported failure to accommodate Plaintiff's disability. The state court complaint, however, already alleged, inter alia, that "the Village did not offer to bring the police headquarters building and other facilities into compliance with the Americans with Disabilities Act or other applicable state and local laws." (ECF No. 17-1 at 12.) The references to Defendants' accessibility and accommodation claims in the complaint and other filings in state court support the Court's conclusion that all of Plaintiff's claims in the federal suit could have been raised in the state court litigation.

16

Plaintiff's sole argument against application of res judicata is that "[t]he claims in this action arise under the federal constitution and federal statutory law (along with some pendant state law claims), none of which were or could have appropriately been brought in the state court action, which was solely a contract action."  (ECF No. 23 at 4 (emphasis added).)  Plaintiff, however, has identified no authority to support this proposition, and each of Plaintiff's causes of action under federal law could have been brought in state court.  See Harris v. Beth Israel Med. Ctr., 367 F. App'x 184, 187 (2d Cir. 2010) (applying res judicata to ADA claim that could have been brought in state court)[3]; Antonsen v. Ward, 943 F.2d 198, 204 (2d Cir. 1991) (applying res judicata to Rehabilitation Act claim that could have been brought in state court); Collard v. Inc. Vill. Of Flower Hill, 759 F.2d 205, 207 (2d Cir. 1985) (applying res judicata to Section 1983 claim that could have been raised in prior state court litigation); Robinson v. Allstate, 706 F. Supp. 2d 320, 325 (W.D.N.Y. 2010), aff'd sub nom. 508 F. App'x 7 (2d Cir. 2013) (applying res judicata to Section 1985 claim plaintiff could have raised in state court).  While Plaintiff elected to only bring "contract" claims in state court, all the claims he now brings in the federal court action could have been included in his state action.  Accordingly, they are barred by res judicata.

### 3.  Plaintiff's Claims Concerning His Status as a Police Officer are Time-Barred

Plaintiff's claims concerning his status as a police officer—including his claims that Defendants acted unlawfully by precluding him from working as a police officer, deeming him to have resigned, and refusing to promote him to detective—are also all time-barred.

All of these claims accrued when Plaintiff executed the Settlement on December 4, 2013— not when the Settlement was actually enforced in 2019.  See, e.g., Wallace v. Town of Stratford

---

[3]  With respect to the ADA claims, these claims could have been raised in the state court litigation even if Plaintiff had not yet exhausted them.  As the Second Circuit recognized, "the mere fact that [a plaintiff's] ADA claims were unexhausted at the time the state action was filed does not alter the conclusion that the claims could have been asserted in the earlier action and are therefore barred under the doctrine of res judicata."  Harris, 367 F. App'x at 187 n3.

Bd. of Educ., 674 F. Supp. 67, 70-71 (D. Conn. 1986) ("[T]he plaintiff knew by June 6, 1981, that she would be terminated at the end of the 1981–82 school year [pursuant to an agreement in which she agreed to resign].  Therefore, the statute of limitations began to run at that time.").  See also Cohen v. City of New York, 574 F. App'x 28, 29 (2d Cir. 2014) ("The complaint alleges that, on July 16, 2008, the parties agreed that Cohen would retire.  At that point, at the latest, it became clear that DOC was not going to grant him an accommodation to continue working as a corrections officer.  Thus Cohen 'knew or should have known,' . . . of the latest of the discriminatory acts that he alleges on July 16, 2008, and it was at that point that his claim accrued . . .  Given this, we agree with the district court's conclusion that any claim based on DOC's failure to respond would be time-barred.") (internal citation omitted).

Because December 4, 2013 was the date on which Plaintiff's claims accrued, none of his claims regarding his status as a police officer are timely.  See Rentas v. Ruffin, 816 F.3d 214, 226 (2d Cir. 2016) ("In New York, an IIED claim must be brought within one year of the injury. N.Y. C.P.L.R. 215(3).  But when, as in this case, a plaintiff sues the City (or an individual whom the City must indemnify), a one–year–and–90–day statute of limitations applies."); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007) ("[C]laims under the NYSHRL . . . are time-barred unless filed within three years of the alleged discriminatory acts"); Castiblanco v. Am. Airlines, Inc., No. 17-CV-5639, 2019 WL 4751880, at *7 (E.D.N.Y. Sept. 29, 2019) ("A plaintiff in New York has 300 days from the date an ADA claim accrues to file a discrimination charge with the EEOC."); Piazza v. Fla. Union Free Sch. Dist., 777 F. Supp. 2d 669, 687 (S.D.N.Y. 2011) ("Rehabilitation Act claims in New York are governed by New York's three-year statute of limitations governing personal injury actions, N.Y. C.P.L.R. § 214(5)."); Farbstein v. Hicksville Pub. Libr., 323 F. Supp. 2d 414, 422 (E.D.N.Y. 2004) (explaining that there is a three-year statute

of limitations for claims brought pursuant to Sections 1983 and 1985 in New York and one-year for claims brought pursuant to Section 1986). Because the longest possible applicable statute of limitations is three years, Plaintiff's claims alleged in the February 4, 2020 federal complaint regarding his status as a police officer are time-barred.

**4. <u>The Settlement Precludes Plaintiff's Claims Concerning His Status as a Police Officer</u>**

Even if res judicata did not bar Plaintiff's claims, the terms of the Settlement preclude his claims concerning his status as a police officer.

First, the Settlement contains an explicit release that releases certain claims. (ECF No. 17-3 at 6-7.) Specifically, Plaintiff waived his:

> right to bring or pursue any lawsuit, grievance, charge, arbitration or administrative proceeding, upon any claim [he] may have or may have had against the Village regarding any matter arising on or before the date of [his] execution of this Agreement, whether or not such claims have been asserted in the Notice of Claim or elsewhere, and whether or not such claims are known at the time of the execution of this Agreement.

(<u>Id.</u> at 6.) In addressing the timeliness of Plaintiff's claims above, the Court explained that his claims concerning his status as a police officer all accrued when he signed the Settlement—not when the Village subsequently invoked the Settlement to force his transfer. Because those claims accrued "on . . . the date of [his] execution of" the Settlement, the release above bars those claims.

Second, in the Settlement, Plaintiff also agreed to:

• "irrevocably resign[] as a Police Officer effective in or about September 2016 on the date when he is scheduled to accrue ten (10) years of service credit with PFRS";

• "timely file a letter of resignation to that effect with the Village in accordance with applicable law";

• "not apply for promotion to any rank above Police Officer in the Department"; and

• refrain from seeking "future employment with the Village as a Police Officer."

(Id. at 4.)  Relatedly, Plaintiff waived "any and all rights he has, or may believe he has, to apply for, be considered for, or be appointed, now or in the future, to any of the superior ranks of the Department."  (Id.)  In these provisions of the Settlement, Plaintiff agreed, inter alia, to resign as a Police Officer in September 2016 and not to seek future employment with the Village as police officer.  These provisions of the Settlement preclude Plaintiff's claims concerning his status as a police officer and are applicable even if some of those claims accrued after the date the Settlement was executed.

Third, with respect to potential reasonable accommodation claims, Plaintiff explicitly agreed in the Settlement that:  (1) "as a result of the injury he suffered on or about August 31, 2011, [Plaintiff] is unable to perform the essential functions of a Police Officer, or any of the superior ranks, in the Department, with or without a reasonable accommodation"; (2) "the Village is providing [Plaintiff] with an accommodation and benefits in excess of and beyond any accommodation required by the federal Americans with Disabilities Act or the New York State Human Rights Law"; and (3) that "there are no permanent 'light duty' positions in the Police Department."  (Id.)

The provisions of the Settlement cited above—in which Plaintiff agreed, inter alia, to irrevocably resign as a police officer and to refrain from seeking future employee with the Village as a police officer—preclude the claims and relief he now seeks.  See Murray v. Town of N. Hempstead, 853 F. Supp. 2d 247, 259 (E.D.N.Y. 2012) ("Once an individual executes a valid settlement agreement, he cannot subsequently seek both the benefit of the agreement and the opportunity to pursue the claim he agreed to settle.").

In response, Plaintiff raises only two conclusory arguments concerning the Settlement, neither of which is persuasive.  First, citing Miele v. Pension Plan of New York State Teamsters

20

<u>Conf. Pension & Ret. Fund</u>, 72 F. Supp. 2d 88, 97 (E.D.N.Y. 1999), Plaintiff argues that "[a]s a matter of law, a person cannot waive claims that may arise in the future . . . [and] therefore a general release executed at the time of the execution of the settlement agreement (2013) does not apply to any of the causes of action asserted herein, all of which occurred wholly or were ongoing beyond the execution of said agreement." (ECF No. 23 at 3.) As explained earlier, however, the release in the Settlement bars all of Plaintiff's claims concerning his status as a police officer because those claims accrued on the date that he signed the Settlement. Accordingly, Plaintiff's argument concerning his inability to release future claims is irrelevant to this issue.[4]

Plaintiff never even addresses the other provisions of the Settlement in which he agreed, <u>inter alia</u>, to irrevocably resign as a police officer and to refrain from seeking future employment with the Village as a police officer. Accordingly, Plaintiff has waived any arguments concerning these provisions, which—in addition to the release language cited above—also preclude all of Plaintiff's claims concerning his status a police officer.[5]

Plaintiff's second argument concerning the Settlement concerns the provisions in which Plaintiff agreed that: (1) "as a result of the injury he suffered on or about August 31, 2011, [Plaintiff] is unable to perform the essential functions of a Police Officer, or any of the superior ranks, in the Department, with or without a reasonable accommodation"; (2) "the Village is

---

[4] <u>Miele</u> was an ERISA suit, in which the Court questioned the ability of the plaintiff to release certain future claims that had not yet occurred, including a "right to future claims that the defendants breached the . . . settlement agreement in that very same settlement agreement." 72 F. Supp. 2d at 97. The court in <u>Miele</u> also stressed that "even if waivers of future claims were judicially cognizable, the defendants have not pointed the court to any language in the Settlement Agreement specifically waiving future claims." <u>Id.</u> Notably, Plaintiff has not cited to any authority addressing the ability of a plaintiff to waive or release the specific causes of action that he is pursuing here.

[5] Even assuming, <u>arguendo</u>, that the ADA does not permit a plaintiff to waive and release unknown future claims, the Court fails to see how such a bar would preclude the specific provisions of the Settlement above in which Plaintiff, as part of a settlement in which he was represented by counsel, received a specific accommodation and, in exchange, agreed to certain limitations on the accommodation and to other obligations, including the obligation to retire as police officer in 2016.

providing [Plaintiff] with an accommodation and benefits in excess of and beyond any accommodation required by the federal Americans with Disabilities Act or the New York State Human Rights Law"; and (3) "there are no permanent 'light duty' positions in the Police Department." (ECF No. 17-3 at 4.)

Plaintiff argues, without citation to any authority, that he is not bound by these provisions because he will establish "that he did not read or understand this language and signed the agreement under duress." (ECF No. 23 at 5.) This argument is meritless because Plaintiff is barred by collateral estoppel from arguing that the Settlement: (1) is unconscionable; (2) was procured by fraud or duress; or (3) is void because it violates public policy.[6] Collateral estoppel bars Plaintiff's arguments regarding the enforceability of the Settlement.[7]

The doctrine of collateral estoppel is closely related to the doctrine of res judicata. Under New York law, collateral estoppel, also known as issue preclusion, "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same." Ryan v. New York Tel. Co., 62 N.Y.2d 494, 500 (1984). Collateral estoppel applies "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999)).

---

[6] Even if Plaintiff had never brought the state court litigation, his claim that he did not read or understand the Settlement would not preclude the enforcement of the Settlement in this action, particularly when Plaintiff was represented by counsel when he signed the Settlement.

[7] In response to Defendants' invocation of the Settlement as a defense, Plaintiff seeks, in this federal suit, to challenge the enforceability of the Settlement by arguing he signed the agreement under duress. Collateral estoppel, however, precludes Plaintiff from relitigating that issue. The related doctrine of res judicata may also bar Plaintiff's attempts to challenge the enforceability of the Settlement in this suit.

Plaintiff clearly raised the enforceability of the Settlement in his prior state court action. This issue was material to the state court's decision, and Plaintiff had a full and fair opportunity to litigate it. This analysis does not change because he has sought to appeal the state court's determination. See, e.g., Hayes v. L. Firm of Aiello & Cannick, No. 10-CV-5511, 2013 WL 1187439, at *8 (S.D.N.Y. Mar. 21, 2013) ("[t]he law is clear that ordinarily the pendency of an appeal should not impact the collateral estoppel effect of an otherwise final and valid judgment."). Accordingly, Plaintiff's attempt to relitigate the enforceability of the Settlement in this federal action is precluded.

Based on the foregoing, the Court finds that the terms of the Settlement provide alternative bases to dismiss Plaintiff's claims.

### 5. **Plaintiff's Accessibility Claims Fail as a Matter of Law and Are Also Time-Barred**

Plaintiff alleges that the Village's facilities, including the ramp to the Armory and the bathrooms in the Armory and Police Headquarters are not accessible under the ADA. However, Plaintiff has failed to plead a cognizable claim under the ADA for failure to accommodate as a matter of law. The second count of the complaint challenges the accessibility of the ramp and bathrooms under Title III of the ADA. (ECF No. 1 at 9.) As Defendants have repeatedly explained, however, Title III does not apply to the Village. (ECF No. 16 at 30; see also Oslzly v. Rosenblatt, No. 14-CV-3638, 2014 WL 4161347, at *6 (E.D.N.Y. Aug. 19, 2014) ("Title III is not applicable to public entities.").) In his pre-motion response letter and again in his opposition brief, Plaintiff seeks leave to amend his second count to proceed under Title II instead of Title III. (ECF No. 8 at 2; ECF No. 23 at 8.) However, such an amendment still fails to solve the problem because he is precluded from proceeding under Title II as well. See Mary Jo C v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 171 (2d Cir. 2013) ("A public employee may not bring a Title II claim against

his or her employer"). Plaintiff also asserts, in passing, that he can bring his accessibility claims under "Title I, if not Title II. Thus, these claims must survive and plaintiff granted leave to amend the Complaint accordingly." (ECF No. 23 at 8.) The Court declines to give Plaintiff, who is represented by counsel, a third bite at the apple to proceed under another legal theory. Accordingly, because his request for leave to amend is denied, his ADA accommodation claim fails as a matter of law.

Moreover, even if the Court were to grant Plaintiff leave to amend his complaint to allege his claims concerning the ramp and bathrooms under Title I, those claims would be time-barred. Plaintiff's complaint makes clear that the allegedly deficient ramp and bathroom facilities have been present since he returned to work in 2013. (See ECF No. 1 at 5 (alleging that deficient ramp "has been there for ages" and that he "has been forced for all these years since his accident to use the women's bathroom").

Plaintiff argues that his claim concerning "denial of handicap accessible facilities"—which he concedes existed "prior to his demotion"—is timely because it is a "continuing violation." (ECF No. 23 at 3-4.) Plaintiff also asks for the opportunity to amend his complaint, if necessary, to clarify his allegations of a continuing violation. (Id.)

However, Plaintiff cannot rely on a continuing violation theory to save these claims. Plaintiff must bring his "accessibility" claims concerning the ramp and the bathrooms under Title I as a failure-to-accommodate claim and such a claim is "not a continuing violation." See Krachenfels v. N. Shore Long Island Jewish Health Sys., No. 13-CV-243, 2014 WL 3867560, at *9 (E.D.N.Y. July 29, 2014); see Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 135 (2d Cir. 2003) ("[T]he rejection of a proposed accommodation is a single completed action when taken . . . Although the effect of the employer's rejection continues to be felt by the employee for as

long as he remains employed, that continued effect is similar to the continued effect of being denied a promotion or denied a transfer, [which are discrete acts].")  Accordingly, the Court finds that Plaintiff's claims concerning the ramp and bathrooms are time-barred.[8]

### 6.  Motion for Sanctions

In addition to moving to dismiss, Defendants have moved for sanctions against Plaintiff pursuant to Federal Rule of Civil Procedure 11.  Rule 11(b) provides that, inter alia, an attorney who presents "a 'written' motion to the court thereby 'certifies' that to the best of his [or her] knowledge, information, and belief formed after a reasonable inquiry, the motion is (1) not presented for any improper purpose, 'such as to harass, cause unnecessary delay, or needlessly increase the cost of the litigation'; (2) 'warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law'; and (3) supported by facts known or likely to be discovered on further investigation."  New Falls Corporaton v. Soni Holdings, LLC, No. 19-CV-449, 2021 WL 919110, at *4 (E.D.N.Y. Mar. 8, 2021) (quoting Fed. R. Civ. P. 11(b)).  "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c).  "When sanctions are imposed on motion of an adversary, the standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement."  StreetEasy, Inc. v. Chertok, 752 F.3d 298, 307 (2d Cir. 2014) (quotations

---

[8]  The Court notes that an "employer has a duty reasonably to accommodate an employee's disability if the disability is obvious—which is to say, if the employer knew or reasonably should have known that the employee was disabled." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008).  Even if Plaintiff never explicitly requested an accommodation concerning the ramp and bathroom facilities and were to claim that—given the nature of his disability—the Village had an affirmative obligation to fix these alleged deficiencies even absent a specific accommodation request from Plaintiff concerning the ramp and bathrooms, any such claim would surely have accrued in 2013 when Plaintiff first returned to work after his accident.  Accordingly, any such claim would also be time-barred.

and citations omitted). "Even if the district court concludes that the assertion of a given claim violates Rule 11, however, the decision whether or not to impose sanctions is a matter for the court's discretion." Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004).

The Court has considered Defendants' arguments and finds that sanctions are not appropriate here. As the Second Circuit has explained, "[t]he fact that a legal theory is a long-shot does not necessarily mean that it is sanctionable." Fishoff v. Coty, Inc., 634 F.3d 647, 654 (2d Cir. 2011). Rather, "[t]he operative question is whether the argument is frivolous, i.e., the legal position has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands." Id. (quotations and citations omitted).

Considering the level of analysis required above in adjudicating Plaintiff's claims, the Court finds that though they may be based on a long-shot legal theory, they do not rise to the level of being frivolous arguments. Indeed, as explained earlier, the Court rejected Defendants' theory in its motion to dismiss based on Rooker-Feldman —which was one of the grounds Defendants point to in their sanctions motion for arguing that Plaintiff's claims are frivolous. (ECF No. 25 at 8-9.) While Plaintiff's claims cannot survive a motion to dismiss, the Court finds that they do not warrant sanctions. See Tantaros v. Fox News Network LLC, No. 17-CV-2958, 2018 WL 1662779, at *4 (S.D.N.Y. Mar. 16, 2018) ("That Plaintiff's complaint may have been subject to dismissal under Rule 12 does not mean that sanctions are warranted or necessary."). Accordingly, Defendants' motion for sanctions is **DENIED**.

## III.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED** in its entirety. Defendants' motion for sanctions is **DENIED**.

The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

**SO ORDERED.**

Dated:  March 31, 2021
        Central Islip, New York

                                          /s/ (JMA)
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE